**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DANIEL BLAUE**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WILLIAM KISSINGER, FOX VALLEY IRON METAL AND AUTO SALVAGE, INC., HUMPHREY PRODUCTS COMPANY, INC., D/B/A HUMPHREY PRODUCTS DIVISION, PARKER-HANNIFIN CORPORATION, F/K/A COMMERCIAL INTERTECH CORPORATION, DANA CORPORATION CHELSEA PRODUCTS DIVISION, AND DANA CORPORATION**<br><br>**Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **No. 03 C 9025**<br><br>**Mag. Judge Michael T. Mason** |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Daniel Blaue ("plaintiff"), filed a nine-count complaint alleging claims for negligence and strict product liability against each of the defendants. Defendants William Kissinger ("Kissinger") and Fox Valley Iron Metal and Auto Salvage, Inc., ("Fox Valley"), filed cross-claims for contribution, under a theory of strict product liability, against defendants Parker-Hannifin Corporation ("Parker-Hannifin"), Dana Corporation ("Dana") and Humphrey Products Company, Inc., d/b/a Humphrey Products Division ("Humphrey"). Humphrey filed a motion for summary judgment on Kissinger and Fox Valley's cross-claim for contribution. Humphrey also filed a motion for summary judgment on Counts IV and V of plaintiff's complaint. For the reasons set forth below, Humphrey's motion for summary judgment on Kissinger and Fox Valley's cross-claim is granted. Humphrey's motion for

summary judgment on Counts IV and V of plaintiff's complaint is granted in part and denied in part.

**BACKGROUND**[1]

**The Accident**

Plaintiff's complaint arises out of an automobile accident that occurred on October 31, 2001. At the time of the accident, Fox Valley employee, William Kissinger, was driving a Fox Valley dump truck on Interstate 94 near the Bradley Road overpass. Fox Valley's truck consisted of two parts: a cab and a dump bed trailer. Before Kissinger reached the Bradley Road overpass, the dump bed became elevated. Robert Friel, who witnessed the accident, testified that he saw the yellow dump bed up at an angle greater than 45 degrees as Kissinger approached the overpass. The dump bed was elevated to such a height that it struck the Bradley Road overpass. Upon impact, the dump bed trailer separated from the cab of the truck and came into contact with plaintiff's vehicle. Plaintiff's complaint alleges that he suffered personal injuries as a result of this accident.

At the time of the accident, Fox Valley's truck was equipped with a hydraulic lift/pump system and power take-off ("PTO") mechanism that was used to lift the dump bed. This system included: a gear pump and valve manufactured by Parker-Hannifin; a PTO device designed and manufactured by Dana; and two dash mounted air valves ("the Humphrey switches") designed and manufactured by Humphrey.

---

[1] The facts in this section are derived from the parties' Rule 56.1 statement of facts or the exhibits attached thereto.

The Humphrey switches controlled the PTO and dump bed on Fox Valley's truck.[2] A two-position Humphrey switch was used to turn the PTO on and off ("the PTO switch"). A three-position Humphrey switch was used to raise, hold and lower the dump bed ("the dump switch"). The Humphrey switches were installed on Fox Valley's truck by either Kissinger or Fox Valley's mechanic, John Johnson ("Johnson"), at Kissinger's request. While Johnson could not say for sure who installed the switches on the truck in question, Johnson was familiar with these switches because he installed them on many of Fox Valley's trucks.

On the morning of the accident, Kissinger had driven Fox Valley's dump truck from Oshkosh, Wisconsin to Chicago, Illinois to deliver electric motors. He was on his way back to Oshkosh when the accident occurred. Kissinger explained his normal routine when he dumped materials at a delivery site. He testified that he would first engage the PTO and then use the dump switch to raise the dump bed. Kissinger further testified that the dump bed could not be raised unless the PTO was engaged, meaning that the PTO switch had to be in the "on" position. After he was finished with the dump, Kissinger would lower the dump bed and flip the PTO switch to the off position. Kissinger testified that to the best of his knowledge, he disengaged or turned off the PTO after he dumped the electric motors on the morning of October 31, 2001.

**The Experts' Opinions**

Several experts in this case have offered opinions as to what caused the dump bed to elevate. All of the experts agree that the PTO had to be engaged or "on" for the dump

[2] The Humphrey switches are general purpose air valves that can be used in hundreds of applications. Humphrey was aware that they might be dash mounted in tractor-trailers.

bed to rise. They also agree that despite Kissinger's testimony, he must have left the PTO engaged after he dumped the electric motors on the morning of the accident. The experts disagree, however, as to what caused the dump bed to elevate once Kissinger began driving on Interstate 94 with the PTO still engaged. For instance, Humphrey's expert, Larry Vande Walle, opined that the dump bed likely was raised by inadvertent activation, *i.e.*, that while Kissinger drove on Interstate 94, either he or something in his cab inadvertently bumped or hit the dump switch, causing the dump bed to rise. Kissinger testified that from the time he was a mile from the Bradley Road overpass to the time of impact, his hands were on the steering wheel. Based, in part, on that testimony, Fox Valley's expert, Don Marty, concluded that it is most probable that the dump bed unexpectedly rose due to excessive back pressure rather than inadvertent activation of the dump switch. Plaintiff's expert, R. Kevin Smith, agreed that back pressure might have caused the dump bed to rise.

Mr. Smith also opined that all dash mounted switches, like the Humphrey switches, should be guarded against inadvertent activation. Smith testified that the manufacturer of such switches should offer guarding and provide guidelines as to when the user might want to consider guarding against inadvertent activation. The Humphrey switches were not sold with guarding.

Fox Valley, through Johnson, knew that guarding was necessary to prevent inadvertent activation. Johnson testified that guarding was standard in the industry, and that Fox Valley's practice was to install a red safety cover over the PTO switch if it did not come with guarding. According to Johnson, the PTO switch on Kissinger's truck was equipped with a red safety cover as of September 15, 2001 when he prepared the 10,000

mile checklist. He testified that if the truck did not have a safety cover over the PTO switch at that time, he would have either installed it or made a notation on the 10,000 mile checklist. The checklist did not have any such notation, which indicated to Johnson that the safety cover was on the PTO switch. Johnson further testified that each of Fox Valley's trucks was equipped with a red safety cover over the PTO switch because "you don't want [the PTO] activated going down the freeway." However, photographs of the truck's dash taken after the accident did not show a safety cover on either of the switches.

Humphrey also sold its switches without any written material within or on the packaging. Humphrey did publish a products catalogue that it provided to its distributors and anyone who asked for it. The catalogue includes a section entitled "General Guidelines," which instructs end users to design a system that is safe and efficient, and to "give special consideration to any potential for accidental activation." However, it is unclear whether anyone at Fox Valley knew that the catalogue was available to them or that it contained information that might be helpful in determining how to install the switches. Indeed, Johnson testified that the Humphrey switches did not come with a manual. Humphrey employees testified that the company expects the end users of its products to know how to design a proper system. Humphrey also relies on its distributors to assist end users with almost any potential application for its switches.

The parties' experts offered opinions with respect to Humphrey's failure to provide any product literature or warnings with the switches it sold. Plaintiff's expert opined that the manufacturers of "the PTO and hydraulic pump system were negligent for not providing safety instructions, warnings, application literature and devices to alert the installer of the system that [certain] safety controls were necessary to ensure safe operation." Mr. Smith

concluded that the products making up the PTO, pump, and their controls were defective in design and unreasonably dangerous in that an unreasonable combination of hazard and risk existed that produced a catastrophic event. Smith testified that Humphrey should supply literature with the switches that explains the safety considerations that need to be taken into account when applying those switches. He further testified that he would expect Humphrey to provide safety guidelines that would outline safety-critical applications.

Fox Valley's expert, Mr. Marty, opined that Humphrey had the responsibility to provide contact information regarding system safety design considerations involving the use of its switches. Marty suggested that Humphrey include a simple tag or label in its packaging that stated something to the effect of: "switches of this type have safety-critical applications and may need to be guarded or there may be other safety design issues to be considered; if you have any questions regarding your particular application, here's how you can contact us ...." Marty then suggested that Humphrey provide a toll free number, website information or direct the user to a distributor. Marty testified that if such language had been included in the packaging with the switches, either Kissinger or Johnson would have been more likely to contact Humphrey or seek out safety-critical information. Marty's opinion is based on the fact that it would have been easier to contact Humphrey if a package insert had been included and that such an insert would have informed Kissinger and Johnson that the switches have safety-critical applications. Marty also explained that human beings are much more likely to do something when it is made easier for them to do.

Marty further testified that if the package insert he suggested had been included with the switches, Kissinger or Johnson would have been more likely to install a solenoid valve, which shuts off air supply to the PTO at highway speeds. Marty explained that Kissinger

or Johnson would have been more likely to install a solenoid valve based on the testimony of the Humphrey employees and their understanding of the importance of incorporating such a device into the system. Marty admitted that this opinion is based on his belief that the package insert would have reminded Kissinger or Johnson to contact Humphrey and it would have facilitated the ease of doing so. It is not clear whether Johnson or Kissinger knew of the existence of Humphrey's solenoid valve or of the importance of incorporating such a device into the system.

**Plaintiff's Complaint**

Plaintiff's complaint contains two counts against Humphrey: one strict liability count and one negligence count. In the strict liability count (Count IV), plaintiff alleges that at the time they left Humphrey's control, the PTO switch and the dump switch were unreasonably dangerous and defective in one or more of the following respects:

> a. The [switches] were designed, assembled, manufactured, and/or configured in such a manner that they malfunctioned or failed, thereby permitting the hydraulic lift mechanism to inadvertently activate;
>
> b. The [switches] were designed, assembled, manufactured, and/or configured in such a manner that they inadvertently switched to the activated position during highway operation of the aforesaid truck;
>
> c. The [switches] were designed, assembled, manufactured, and/or configured in such a manner that they lost air pressure or decompressed, thereby permitting the hydraulic lift mechanism to inadvertently activate during highway operation of the aforesaid truck;
>
> d. The [switches] were not equipped with a safety device/safety cover to prevent inadvertent activation;
>
> e. Failed to have proper labeling and warning for use; and
>
> f. The [switches] were otherwise defective and unsafe.

In the negligence count (Count V), plaintiff alleges that Humphrey was negligent in

the same manner as described in paragraphs (a)-(d) and (f) above. Plaintiff's negligence count does not include a failure to warn allegation.

**Fox Valley's Cross-Claim**

Kissinger and Fox Valley filed a cross-claim for contribution (Count III) against Humphrey sounding in strict product liability.[3] Fox Valley alleges that the Humphrey switches involved in the accident were unreasonably dangerous because Humphrey failed to provide any consumer product information with the switches. Fox Valley further alleges that the unreasonably dangerous nature of the Humphrey switches entitles Fox Valley to contribution from Humphrey in the event that a jury finds in favor of plaintiff and against Fox Valley.

**LEGAL ANALYSIS**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323. "A genuine issue of material fact exists only if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Alexander v. Dept. of Health and Family Services*, 263 F.3d 673, 680 (7th Cir. 2001). When making this determination, we review the record in the light most favorable to the nonmovant, and draw all reasonable inferences in his favor. *Id.*

---

[3] For ease of reference, this claim will be referred to as Fox Valley's cross-claim.

However, once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Howland v. Kilquist*, 833 F.2d 639, 642 (7th Cir. 1987). Federal Rule of Civil Procedure 56(c) "mandates summary judgment when the nonmoving party fails to establish the existence of an element essential to its case and on which that party will bear the burden of proof at trial." *Jefferson v. City of Chicago*, 2000 U.S. Dist. LEXIS 22081, *10 (N.D. Ill. 2000).

In diversity actions, federal courts apply federal procedural rules and state substantive law. *See Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1033 (7th Cir. 1998) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). Thus, Illinois law governs the substantive issues in this case.

## I. Fox Valley's Failure to Warn Claim

The law of strict product liability imposes upon manufacturers a nondelegable duty to make products that are reasonably safe. *Baltus v. Weaver Div. of Kidde & Co.*, 199 Ill. App. 3d 821, 829, 557 N.E.2d 580, 585 (1st Dist. 1990). To prevail in a strict liability action, a plaintiff must plead and prove that the injury resulted from a condition of the product, that the condition was an unreasonably dangerous one, and that the condition existed at the time the product left the manufacturer's control. *Sollami v. Eaton*, 201 Ill. 2d 1, 7, 772 N.E.2d 215, 219 (2002) (citing *Haudrich v. Howmedica, Inc.*, 169 Ill.2d 525, 540, 215 Ill.Dec. 108, 662 N.E.2d 1248 (1996)). A product may be found unreasonably dangerous by virtue of a design defect or a failure of the manufacturer to warn of the danger or instruct on the proper use of the product as to which the average consumer

would not be aware. *Id.*

Fox Valley alleges that the Humphrey switches were unreasonably dangerous and defective because Humphrey failed to provide any consumer product information with the switches. In order to establish a prima facie case of failure to warn, Fox Valley must show that the manufacturer failed to warn of non-obvious dangers that it knew or should have known were posed by its products at the time the product left the manufacturer's control. *Schultz v. Hennessy Indus., Inc.*, 222 Ill. App. 3d 532, 540, 584 N.E.2d 235, 241 (1st Dist. 1991); *Wheeler v. Chrysler Corp.*, 2000 U.S. Dist. LEXIS 2725, *15 (N.D. Ill. 2000). Fox Valley has demonstrated that Humphrey was aware that its switches might be dash mounted and that such dash mounted switches posed certain non-obvious dangers.

Fox Valley also bears the burden of establishing that the failure to warn was a proximate cause of plaintiff's injuries. *Kane v. R.D. Werner Co., Inc.*, 275 Ill. App. 3d 1035, 1037, 657 N.E.2d 37, 39 (1st Dist. 1995). To establish proximate causation, Fox Valley must demonstrate that an adequate warning would have been read and heeded, and would have prevented the injuries in question. *Schultz*, 222 Ill. App. 3d at 542, 584 N.E.2d at 242; *Broussard v. Houdaille Industries, Inc.*, 183 Ill. App. 3d 739, 744, 539 N.E.2d 360, 363 (1st Dist. 1989) (stating that in warning cases, there must be sufficient evidence supporting a reasonable inference, rather than a guess, that the presence of adequate warnings would have prevented the plaintiff's injuries); *Wheeler*, 2000 U.S. Dist. LEXIS 2725 at *15; *Phillips v. Raymond Corp.*, 2006 U.S. Dist. LEXIS 27632, *23 (N.D. Ill. 2006) (recognizing that a failure to warn is the proximate cause of an injury only if the plaintiff demonstrates that he would have read and followed an adequate warning, and that the

warning would have prevented his injuries).

Humphrey argues that Fox Valley has not demonstrated that Humphrey's failure to warn was a proximate cause of plaintiff's injuries. This Court agrees. Fox Valley's expert, Mr. Marty, testified that Humphrey should have included a package insert with its switches that informed users that the switches have safety-critical applications, that they need to be guarded, and that there may be other safety design issues to consider. Marty also suggested that Humphrey provide a toll free number, website information or direct the user to a distributor. Plaintiff's expert, Mr. Smith, testified Humphrey should have supplied literature with the switches explaining the safety considerations that need to be taken into account when applying the switches. He also testified that he would expect Humphrey to provide safety guidelines that would outline safety-critical applications.

However, there is no credible evidence that Kissinger or Johnson would have acted any differently if Humphrey had included any of these suggested warnings with its switches. Neither Kissinger nor Johnson testified regarding the impact, if any, a warning would have had on their decision to install the Humphrey switches in the manner they were installed. The only evidence either Fox Valley or plaintiff offered in this regard was Mr. Marty's testimony.[4] Marty claimed that Kissinger or Johnson would have been more likely to contact Humphrey or seek out safety-critical information if it had been brought to their attention. Marty based his opinion on the fact that it would have been easier to contact Humphrey if a package insert had been included. He further contended that such an insert

[4] While plaintiff's expert suggested a warning Humphrey should have included with its switches, he did not offer any opinion with respect to whether Kissinger or Johnson would have read and followed such a warning, or that the warning would have prevented plaintiff's injuries.

would have informed Kissinger and Johnson that the switches have safety-critical applications. Marty also explained that human beings are much more likely to do something when it is made easier for them to do.

After reviewing Marty's testimony about what Kissinger or Johnson purportedly would have done if Humphrey had included a warning with its switches, we find that the testimony is based purely on speculation and conjecture. Liability cannot be predicated upon surmise or conjecture as to the cause of a plaintiff's injuries. *Broussard*, 183 Ill. App. 3d at 744, 539 N.E.2d at 363. Instead, proximate cause can only be established where there is a reasonable certainty that the defendant's acts caused the injuries. *Id.* Moreover, expert testimony based on speculation or conjecture is insufficient to avoid summary judgment. *Schultz*, 222 Ill. App. 3d at 543, 584 N.E.2d at 243. Thus, Marty's speculative testimony is not enough to preclude summary judgment.

Fox Valley argues that the existence of divergent expert testimony about what caused the accident creates a disputed issue of material fact for the jury to decide. Regardless of what caused the dump bed to elevate, either back pressure or inadvertent activation, Fox Valley cannot escape summary judgment unless it shows that Humphrey's failure to warn was a proximate cause of plaintiff's injuries. *Kane*, 275 Ill. App. 3d at 1037, 657 N.E.2d at 39; *Wheeler*, 2000 U.S. Dist. LEXIS 2725 at *15. Fox Valley has not made such a showing.

We find nothing in the record from which it can be inferred that Humphrey's failure to warn proximately caused plaintiff's injuries. Simply put, neither Fox Valley nor plaintiff presented any credible evidence that an adequate warning would have been read and heeded, and would have prevented plaintiff's injuries. Accordingly, summary judgment on

Fox Valley's cross-claim against Humphrey is granted. *See Phillips v. Raymond Corp.*, 2006 U.S. Dist. LEXIS 27632 at *23 (summary judgment granted where plaintiff failed to show that he would have read an adequate warning or that such a warning would have prevented his injuries); *Schultz*, 222 Ill. App. 3d at 543, 584 N.E.2d at 243 (trial court properly granted summary judgment where plaintiff failed to establish proximate cause in failure to warn case); *Broussard*, 183 Ill. App. 3d at 746, 539 N.E.2d at 364.

## II. Plaintiff's Failure to Warn Claim

Like Fox Valley, plaintiff failed to present any credible evidence that an adequate warning would have been read and heeded, and would have prevented plaintiff's injuries. Thus, plaintiff has not established that Humphrey's failure to warn proximately caused his injuries. Accordingly, for the reasons stated above, Humphrey's motion for summary judgment is granted on plaintiff's failure to warn claim, as alleged in Count IV, sub-part (e).

## III. Plaintiff's Failure to Guard Claims[5]

Plaintiff's complaint alleges that the Humphrey switches were unreasonably dangerous and that Humphrey was negligent because the switches were not equipped with a safety device/safety cover to prevent inadvertent activation. *See* Count IV, sub-part (d) and Count V, sub-part (d). Plaintiff's expert testified that all dash mounted switches should be guarded against inadvertent activation. Plaintiff argues that the jury will need to determine: whether Humphrey had an obligation to provide guarding when the switches

---

[5] Fox Valley also argues that the failure to guard claims should go to the jury. However, Fox Valley's cross-claim only contains a failure to warn claim. The cross-claim does not allege that Humphrey was negligent or that the switches were unreasonably dangerous or defective because they were sold without safety guards. Accordingly, the discussion in this section is limited to plaintiff's failure to guard claims.

were sold; whether the guards should have been specifically designed for these products; and whether the guards should have been engineered to be as non-defeatable by removal as possible.

Humphrey sold its switches without any safety guards or covers. However, the undisputed evidence shows that Fox Valley installed a red safety cover on the PTO switch prior to the accident. According to Johnson, the PTO switch on Kissinger's truck was equipped with a red safety cover as of September 15, 2001 when he prepared the 10,000 mile checklist. He testified that if the truck did not have a safety cover over the PTO switch at that time, he would have either installed it or made a notation on the 10,000 mile checklist. The checklist did not have any such notation, which indicated to Johnson that the safety cover was on the PTO switch. Moreover, Johnson stated unequivocally that all of Fox Valley's trucks have red safety covers over the PTO switches because of the risk of inadvertently activating the PTO while driving on the highway.

Humphrey argues that because Fox Valley installed safety covers on the switches, whatever defective condition might have existed at the time the switches left Humphrey's control was eliminated. With respect to the PTO switch, this Court agrees. "If a product is unreasonably dangerous when it leaves the defendant's control but the danger-causing deficiency is thereafter remedied and the product rendered safe, there can be no proximate causal relationship between the condition of the product when it left the defendant's control and a post-remedial action injury." *Monreal v. Waterbury-Farrel Foundry & Mach. Co.*, 269 Ill. App. 3d 841, 846, 646 N.E.2d 1337, 1340 (1st Dist. 1995) (citing *Rios v. Niagara Machine & Tool Works*, 59 Ill. 2d 79, 319 N.E.2d 232 (1974)).

In *Rios*, the defendant manufacturer sold a punch press without any safety devices.

Plaintiff's employer subsequently installed a safety device to pull the operator's hands out of the die area. Plaintiff was injured when the safety device installed by his employer failed. The Supreme Court of Illinois held that whatever unreasonably dangerous conditions existed when the machine left the manufacturer's control were fully corrected by the employer's addition of a safety device, the failure of which proximately caused the plaintiff's injuries. The court affirmed the reversal of a jury verdict for plaintiff, finding that there was no evidence of a causal connection between the plaintiff's injuries and the condition of the machine.

In the instant case, as in *Rios*, once Fox Valley installed a safety cover on the PTO switch, any unreasonably dangerous condition that might have existed when the PTO switch left Humphrey's control without a safety cover was fully corrected. *Rios*, 59 Ill. 2d at 85, 319 N.E.2d at 236. Thus, the causal connection between the alleged defective condition of the PTO switch, as sold by Humphrey without a safety cover, and plaintiff's injury was broken. Based on the foregoing, plaintiff cannot demonstrate that Humphrey's failure to provide a safety cover with the PTO switch proximately caused plaintiff's injuries. Consequently, summary judgment is granted on plaintiff's claim that the PTO switch was unreasonably dangerous and defective because it was not equipped with a safety cover. For the same reason, summary judgment is granted on plaintiff's claim that Humphrey was negligent because it sold the PTO switch without a safety cover. *Wheeler*, 2000 U.S. Dist. LEXIS 2725 at *21 (recognizing that the concept of proximate cause is the same in cases of negligence and strict liability in tort); *Schultz*, 222 Ill. App. 3d at 541, 584 N.E.2d at 241.

However, we cannot reach the same conclusion with respect to plaintiff's claims that the dump switch was unreasonably dangerous and that Humphrey was negligent because

the dump switch was not equipped with a safety cover. Despite Humphrey's arguments to the contrary, it is not clear from Johnson's testimony that Fox Valley installed a safety cover on the dump switch. Johnson's testimony only shows that Fox Valley's trucks had red safety covers over the PTO switches and that the PTO switch on Kissinger's truck was equipped with a safety cover as of September 15, 2001. Furthermore, plaintiff failed to present any other evidence demonstrating that Fox Valley installed a safety cover on the dump switch. This Court cannot grant summary judgment in favor of Humphrey based on the theory that Fox Valley corrected the unreasonably dangerous and defective condition of the product because we do not know whether Fox Valley installed a safety cover on the dump switch prior to the accident.

In attacking plaintiff's failure to guard claims, Humphrey relied exclusively on its argument that Fox Valley installed safety covers on both switches, thereby eliminating the unreasonably dangerous condition of the switches. As a result, Humphrey did not offer any other basis for granting summary judgment on these claims. However, "to succeed on a motion for summary judgment, the movant bears the burden to identify for the court, from among all the material of record, the absence of any genuine issue of material fact." *Major Mat Co. v. Monsanto Co.*, 969 F.2d 579, 582 (7th Cir. 1992). Simply put, Humphrey has not met its burden. Indeed, Humphrey failed to identify the absence of material issues of fact on either: (1) plaintiff's claim that the dump switch was unreasonably dangerous because it was sold without a safety cover (Count IV, sub-part(d)), or (2) plaintiff's claim that Humphrey was negligent because the dump switch was not equipped with a safety cover (Count V, sub-part (d)).

Furthermore, after reviewing the record and drawing all reasonable inferences in

plaintiff's favor, this Court finds that there are questions of fact relating to proximate cause. For instance, there is expert testimony that inadvertent activation likely caused the dump bed to rise, *i.e.*, that while Kissinger drove on Interstate 94 with the PTO still engaged, either he or something in his cab inadvertently hit the dump switch, causing the dump bed to rise. Therefore, a reasonable jury could find that the dangerous condition of the dump switch, without a safety cover, was a proximate cause of plaintiff's injuries. That being said, other experts concluded that excessive back pressure, rather than inadvertent activation of the dump switch, caused the dump bed to rise. Accordingly, there are questions of fact regarding what caused the accident and whether Humphrey's failure to provide a safety cover with the dump switch proximately caused plaintiff's injuries.[6]

Based on the foregoing, summary judgment is denied on plaintiff's claim that the dump switch was unreasonably dangerous and defective because it was not equipped with a safety cover. For the same reason, summary judgment is denied on plaintiff's claim that Humphrey was negligent because the dump switch was not equipped with a safety cover. *Wheeler*, 2000 U.S. Dist. LEXIS 2725 at *21 (recognizing that the concept of proximate cause is the same in cases of negligence and strict liability in tort).

## IV. Plaintiff's Remaining Strict Product Liability and Negligence Claims

Plaintiff's remaining allegations suggest that the Humphrey switches malfunctioned in some manner. In particular, plaintiff alleged that the switches were defective and unreasonably dangerous because: (1) they malfunctioned or failed, thereby permitting the

---

[6] Moreover, the question of whether a defendant's product is unreasonably dangerous for failure to incorporate certain safety devices is generally a question to be decided by a jury. *Turney v. Ford Motor Co.*, 94 Ill. App. 3d 678, 688, 418 N.E.2d 1079, 1086 (1st Dist. 1981).

hydraulic lift mechanism to inadvertently activate; (2) they lost air pressure or decompressed, thereby permitting the hydraulic lift mechanism to inadvertently activate; (3) they inadvertently switched to the activated position during highway operation; or (4) they were otherwise defective and unsafe. *See* Count IV, sub-parts (a)-(c) and (f). In plaintiff's negligence count, he alleged that the switches were negligently designed and manufactured for the same reasons. *See* Count V, sub-parts (a)-(c) and (e).

In short, there is no evidence or testimony from any witness to support these allegations. There is no evidence that the Humphrey switches malfunctioned in any way or were not working properly at the time of the accident. There is also no evidence that the switches lost air pressure or decompressed. If the build up of back pressure caused the dump bed to rise, as some experts suggested, plaintiff failed to produce any evidence that the back pressure problem had any connection to the Humphrey switches. Indeed, plaintiff has not pointed to any evidence suggesting that the operation or malfunction of the switches caused or contributed to back pressure build up.

With respect to plaintiff's claim that the Humphrey switches inadvertently switched to the activated position during highway operation, again, the evidence is lacking. The only way the switches could have "inadvertently switched to the activated position" is if they malfunctioned or Kissinger bumped or hit the switches to change their position. As discussed above, there is no evidence that either the PTO switch or the dump switch malfunctioned. Furthermore, if Kissinger or something in his cab inadvertently activated the switches, then the switches worked as intended and Humphrey could only be liable for failure to warn or failure to guard. Plaintiff's failure to warn and failure to guard claims were addressed above.

Finally, plaintiff failed to present any evidence that the switches were otherwise defective and unsafe. In fact, plaintiff's expert only offered general, unspecific opinions with regard to Humphrey. Smith opined that the products making up the PTO, pump, and their controls were defective in design and unreasonably dangerous in that an unreasonable combination of hazard and risk existed that produced a catastrophic event. However, Smith failed to specify how the Humphrey switches were defective or unreasonably dangerous or how they contributed to, or caused this catastrophic event. As such, there is no factual basis for Smith's opinion that the switches were unreasonably dangerous and defective. "An expert's opinion is only as valid as the bases and reasons for the opinion. When there is no factual support for an expert's conclusions, his conclusions alone do not create a question of fact." *Gyllin v. College Craft Enters.*, 260 Ill. App. 3d 707, 715, 633 N.E.2d 111, 118 (2nd Dist. 1994).

Because there is no evidence that the Humphrey switches malfunctioned and because plaintiff's expert failed to explain how the switches were defective or unreasonably dangerous or how they proximately caused plaintiff's injuries, summary judgment is granted on Count IV, sub-parts (a)-(c) and (f) and Count V, sub-parts (a)-(c) and (e).

**CONCLUSION**

For the reasons set forth above, Humphrey's motion for summary judgment is denied on plaintiff's claim that the dump switch was unreasonably dangerous and defective because it was not equipped with a safety cover. (Count IV, sub-part (d)). Summary judgment is also denied on plaintiff's claim that Humphrey was negligent because the dump switch was not equipped with a safety cover. (Count V, sub-part (d)).

Humphrey's motion for summary judgment is granted on all of plaintiff's other strict

liability and negligence claims as alleged in Count IV, sub-parts (a)-(c) and (e)-(f) and Count V, sub-parts (a)-(c) and (e). Additionally, Humphrey's motion for summary judgment is granted on Fox Valley's failure to warn cross-claim. It is so ordered.

**ENTER:**

**MICHAEL T. MASON**
**United States Magistrate Judge**

**Dated: July 24, 2006**